Council for Appellant Vitamins Online. Anastasia Billy. Council for Appley, Magleby, Kitasinos, and Greenwood, PC. Matthew W. Grimshaw. Council for Appley, HEARTWISE, INC. Okay, a question for each side. For the appellant, would you like to reserve a little time for rebuttal? Actually, I would like to reserve a lot of time, at least 10 minutes, and any unused time of the five minutes. Sure, okay. Then that means that at about five minutes, Dan, I'm going to be letting you know, or you're going to be pleasing yourself to stop and reserve your time. We appear to have two people ready to speak for the appellee. So have you folks decided how you want to divide up your time? Yes, we have, Your Honor. Okay, well, you want to tell your own story? We're both waiting for the other one to speak. Okay, well, who wants to start and how much time is that person going to take? I will start, Your Honor. Okay. And we are going to divide our time equally. All right, so seven and a half each, huh? Thank you. Yes, thank you, Your Honor. Okay, well, turning to the appellant, I have to say this is the very unusual bankruptcy appeal where one, the appellant appears to have won in the bankruptcy court, and two, there's a lot of money to pay people. So this is not our usual model. So Mr. Niger, you let her rip. Yes, thank you, Your Honor. This is not a usual case. And the reason it's not a usual case is due to the multiple errors that were committed below. Just at the outset, I just want to make sure that we preserve our right and objection to the ruling on the motion for summary disposition, just in case that becomes relevant to the appellate level later. And in this proceeding, we feel like the briefs did a great job of explaining the issues, which is why we moved to submit on the briefs. The reorganized Heartwise filed its opposition brief. And so we challenged the standing of the reorganized Heartwise to oppose and to be heard in this appeal because supposedly the funds in the court's registry have been paid. And so the reorganized Heartwise has no claim to them. The reorganized Heartwise said that, well, those are in a disputed claims reserve under the plan, which it's unable to point to any language in the plan or disclosure statement or anywhere stating that the claims that comprise 98% of the pre-petition debt were not being paid, but were being placed in a disputed claims reserve. That's nowhere to be found. And consequently, the reorganized debtor, those funds can not go back to the organized debtor under the plan. And so it has no standing. You know, I'm just going to point out that I didn't really see that argument until you hit your reply brief. Well, that's because we couldn't raise that in the opening brief because we didn't realize that the reorganized Heartwise was going to take the positions that it did. You didn't know they were an appellee? I'm sorry, I didn't hear you. You didn't know they were an appellee? Well, we knew they were an appellee, but we didn't realize that reorganized Heartwise was going to be asserting that the funds could not be distributed because it claimed that they were a disputed claims reserve. That doesn't show up anywhere, like I said, in the plan or the disclosure statement that we were completely blindsided that. And that's also one of the reasons we felt like that the law was very clear in this case, which is why we filed a motion for summary disposition. And additionally, that also gave Heartwise a chance to fully respond to those arguments in connection with the motion for summary disposition. But having said that, really, I'm here to answer questions or concerns that the panel may have with the positions that we've set forth in our brief. So if the panel has questions, I'd be happy to entertain them. Let me defer to my colleagues and see if they have a question they want to ask at this point. Well, I'll ask. Go ahead. No, no, no, go right ahead. No, go ahead, Judge Baker, go ahead. I was just interested, in your opening brief, the reason that you seek, I believe, is a declaration on appeal that you win, despite the initial decision, and then the motion on reconsideration. And I'm still at a loss as to the path you believe leads you to that in light of the record before us. So I was hoping you could help me understand the record as to why we should not only reverse the issue on appeal, which is the reconsideration, although the underlying is brought up, but then to enter the relief that you seek to strike, to disallow the opposing claim. And not to gang up on you, you can assume we're all asking that question. Fair enough, thank you, Your Honor. So we have on appeal numerous orders. We have the initial orders, which were entered by Judge Wallace, in which he, after a hearing on the allowability of Claims 3 and 5, he issued a decision. And in that decision, he found that Claim 3 was not allowed. He overruled the objection to Claim 5. And then we have the orders of Judge Clarkson, in which he went back and reviewed the initial orders, and he vacated the initial orders, and then entered his order of standing from deciding the claims and objections brought by MCG. Let's just take that in order of chronology. And again, going to Judge Lafferty's initial comments, this is a confusing case, because there was a lot of turmoil for something that seems like it shouldn't be a whole lot of turmoil to figure out how you get paid on the money that's been deposited. Judge Wallace's decision has been addressed and set aside by Judge Clarkson. Isn't that water under the bridge now? No, it's not, Your Honor, because when a reconsideration order, an order deciding a motion for reconsideration is brought up on appeal, well, the underlying orders are also brought up on appeal with that. And so the panel can review all of the orders. And- I understand that, but- Go ahead, Judge. Let me ask the question I think Judge Springer's gonna ask, and if it's not the one, you'll certainly correct me. I mean, the point of overruling one decision and getting us back to square one was the only reason why the Vitamins Online claim was disallowed is because the other one was allowed, right? That's it. So all this did was get us back to a, somebody has to figure out who is gonna be paid this money. I mean, there was nothing on the merits beyond that, zero, correct? Well, I don't know that I entirely agree with, Your Honor. Well, you better tell me why. I certainly will. So Judge Wallace, when he made that decision, he found that, I mean, it wasn't just because MCG's claim is allowed, that Vitamins Online claim was disallowed. And I mean, that was part of the error, right? Because each claim and objection has to be considered on its own merits. And so that was an error right there. And Judge Wallace found that Vitamins Online- Let me stop you, okay? If all he found was, if I'm gonna overrule an objection on one, I necessarily have to disallow the other. What else did he decide? Well, he decided that- Now, you may not like the way he phrased it, but isn't that what he decided? Well, I think that that was the net effect of what happened, that Judge Wallace felt like he had to allow one claim or the other, and that he couldn't allow both claims because they were both trying to enforce the same judgment. So I think that that's the net effect of what happened. But to get back to the original question of how the panel gets the relief that's being sought here, the panel, in reviewing Judge Clarkson's order, also reviews Judge Wallace's orders. And to the extent that Judge Clarkson, when reviewing Judge Wallace's orders, made errors, well, the panel needs to fix those. And specifically with regard to the issue of standing. If MCG does not have standing to bring its Claim 5 and to bring its objection to Claim 3, well, then Judge Clarkson could not, then what's the net effect? Okay, you're well into the time you wanted to reserve. Let me leave you with this, okay? If your standing argument is you're wrong on the merits, it's not a standing argument. You might want to address that when we come back to you, unless you want to take more time now. Yes, so I'll address it very briefly before I rest. So the standing argument precludes Judge Clarkson from entering an order of standing. And so, and if they don't have standing, then Claim 5 must be dismissed. Their objection to Claim 3 must be dismissed. But is it the standing argument that you're not the proper claimant? And isn't that the merits? Yes, they are related. All right, okay, I think, unless you want to go forward, you're well into the time you intended to reserve. No, I would like to reserve the rest. Thank you, Your Honor. Okay, thank you very much. Okay. Mr. Grimshaw, why don't you start by telling us why you have standing? Sure. Number one, Section 1109 gives a debtor standing to appear in every proceeding in a Chapter 11 case. Well, what about the argument that Mr. Nigers is putting forth that, you know, you really don't have a dog in this fight anymore. The money is there. It's going to get paid. Please address that, if you will. You bet. There are two aspects to what is going on, okay? One, as between who has the right to get paid, I agree. Heart Wise does not have a dog in that fight. But you got an appeal still, right? But we have an appeal, and we have an appeal because Vitamins Online, and just for my own sake, I'm going to refer to them as VOL, because that's the way I've done it throughout this case. So forgive me. VOL is trying to change the terms of the plan and change the terms of the confirmation order. And that gives the debtor standing to enforce the terms of its own plan. So counsel, just to clarify. So what you're saying is, what you're saying is the money was deposited in the court registry, and everybody knew when it was deposited that it wouldn't be distributed until all the appeals were completed. That was clear from the confirmation order, and that was clear from the plan? That's exactly correct. And because Vitamins Online is now trying to alter those provisions of the confirmed plan, we have standing to object and enforce the terms of our own plan. Well, and the argument that you're making is that you have standing, because if you win on appeal, the money never gets distributed to anybody. Well, I suppose that depends on the extent to which we win. But yes, Your Honor, that is certainly a potential, okay? And this also directly ties into an argument that I'll address now, I was going to address later, but this argument that the debtor is somehow judicially a stop from now taking a position that it, because we're claiming that their claim is contingent, at least that's the assertion. No, no, the debtor does not claim that Vitamins Online or Magleby's claim, the claims based on the judgment are contingent. They're disputed. We've always asserted they were disputed. That's the whole point of the disputed claims reserve in the plan is you've got disputed claims and there's a resolution mechanism. And the only thing that we're advocating is that the plan be enforced, that dispute resolution mechanism go forward. And we see what the 10th Circuit Court of Appeals has to say. Once the 10th Circuit decides what it's going to do, if there are subsequent proceedings, so be it. At that point, the plan allows for the release of funds. What's critical here, and I think what Your Honors recognize is the plan confirmation order was never appealed. Nobody appealed it. So- It might've given you great surprise that you're learning the reply brief that you're never going to get that money back. I was shocked, yes. I mean, for example, what happens if we win on appeal- Yeah, yeah, yeah. And there is absolutely- You don't get the money back. Yeah. You don't get the money- I'm stunned. It makes no sense. That's the entire reason why there is a disputed claims provision in the plan. This is a part of every Chapter 11 plan that's ever confirmed because you've got to deal with disputes of claims. So I think the idea that the debtor doesn't have standing is a little silly. I think it's clear that the plan does in fact tether the payment of a judgment-based claim to the termination of all of the appeals. For example, there's the court's memorandum decision where he decided to confirm the plan. It was from November 23rd. Admittedly, Vitamins Online filed a motion for reconsideration. The judge in the confirmation order denied that motion and left intact his reasoning from before and explained more reasons why he was denying that. The confirmation order approves the plan. The confirmation order adopts the findings of fact and conclusions of law, which specifically adopt and give blessing to the tethering of the payment in the way that we have advocated all throughout. And quite frankly, preclusion attaches. Preclusion attaches differently in a bankruptcy case than it does in traditional litigation. As the panel is well aware in a Chapter 11 case, there are numerous discreet issues. Those issues are resolved and when orders become appealable and final, they're treated as any other federal judgment. And so Vitamins Online cannot use this appeal to attack or alter the terms of the plan, the confirmation order, the findings and conclusions in support of it, none of that. In an attempt to get around that, now Vitamins Online does say that there's a provision of the confirmation order that somehow supports their argument. It's completely taken out of context. It's critical that the court looks at the confirmation order. Four things happen in that order. It's divided into four separate sections. The first section deals with confirmation of the plan. The plan gets confirmed, the findings and conclusions and support thereof get adopted. Section two deals with a motion for a stay pending appeal. David Paul Doyle, another, a former insider didn't like some of the evidentiary rulings that Judge Wallace made at the confirmation trial. He filed an interlocutory appeal and then sought a stay pending appeal, tried to stay the entire bankruptcy case while that appeal was taken. That was denied, the motion was denied. In that section, there is a statement that Vitamins Online tries to latch onto when Judge Wallace discussed the potential harm to third parties if he would have issued the stay pending appeal. It's not in the context of confirming the plan. Notably, the section that VOL relies on doesn't say that the tethering that the plan imposes of a judgment-based claims payment to the resolution of the 10th Circuit Appeal, that language does not say that tethering is undone. You would expect to find that not in a discussion of why a motion for a stay pending appeal is being denied, but in the confirmation section, and it's not there. The only logical explanation is the one that we've offered in our brief. I know I'm out of time. I'm just scrolling through here real quick to make sure I captured everything. Yeah, that's up to you folks. There was one more claim that we're raising something now that we didn't raise below. Our limited objection below explained that the tethering was there. Here, we've raised the tethering and simply explained why it continues and why it exists. I'll defer the rest of the time. Okay. All right. Shall I just jump right in? Yes, please. Leave as you will. Thank you. May it please the court, Anastasia Billy for Shepard Mullen on behalf of Apelli, Magleby, Cattacinos, and Greenwood, which is gonna be MCG from now on because that's just too much of a mouthful. I think the important thing here to focus on is that Vitamins Online appears to be looking for two things from this appeal, and you all noted this right at the outset in part, right? That they clearly wanna be paid the money that's in the court's registry, and they want it right now. And that's the difficulty. And there's multiple reasons for that difficulty. The first one is as already really well argued by Mr. Grimshaw, the plan just simply doesn't allow for that. The second reason is the procedural status of this case. This case comes up on appeal from an order in which the bankruptcy court has abstained. And the standard for reviewing that abstention order is abuse of discretion. There was no abuse of discretion in the court deciding to abstain on this issue. This is a case that involves a Utah agreement governed by Utah law. It's a case that involves a statutory attorney's lien also governed by Utah law. It's a case- I hear, Ms. Riley, what is the extent of that lien? Because isn't that at odds with your request for the entirety of the payment? There's two pieces here. So first of all, I would say that there is the lien piece, right, which the lien attaches to the judgment proceeds, right, that's where it's ended up now. Originally, the lien was on the judgment. Now that amount's been paid- But you filed a proof of claim for the entirety of the amount, didn't you? Yes, sir, and that's for the second piece, right? So one, it attaches entirely to the proceeds up to obviously the amount of what we're entitled to under a lien, and then the second piece- But is there really a dispute as to, you know, you say secure claim, right of payment. I read these briefs and the volumes that have been written, and I don't really see any true dispute that your firm should be paid the percentage, which gets to your lien claim, but I'm at a loss as to what purpose is served by the turnover of the entirety of that, assuming that the fluctuation, whatever that lien may be, can be captured. So that's the first issue. Obviously, we don't know exactly what the dollar amount will be, right, at this point. The attorney's fees award hasn't been fixed by the court in Utah, so the total amount of the judgment's an estimated 14.5 million, I'm sorry, but we don't know exactly what that's gonna be. So obviously there's- But that would be true on any contingency fee that did not have this turnover provision, so- Absolutely. The difference here is that the engagement agreement expressly provides for the entirety of it to be paid to MCG. But to what purpose though? I mean, because it is only for security, is it not? You have no ownership interest in that, no ability, and obviously the express contractual obligation to turn over the balance due after your fee. So what purpose is being served by a bankruptcy distributive analysis in that aspect of your claim? So this is one of the places where it's difficult that we have no final determination from the underlying court and sort of the procedure of how this took place. When this case was originally decided by Judge Wallace, he decided it based on the four corners of the agreement, and he did not allow the parties to introduce any additional extrinsic evidence outside the four corners of the agreement at the request of Vitamins Online. He agreed with them and said, that's okay, we don't need anything else. And this is one of those places where it makes it difficult because there's something else that's missing from the record as part of why this matters. If you've seen the entirety of the record, you've seen mentions to the fact that there is a litigation funder here as well that funded Vitamins Online's efforts. And part of what took place is that MCG agreed that when it received the funds paid in total on the judgment, it would then make sure that the appropriate amount was distributed to the litigation funder. So MCG's concerned not only to make sure that it receives what it's supposed to receive, but that the funds are properly handled in terms of making sure that they go where they need to go. If that's all about the Vitamins Online- Can I make sure I get that? Is there some covenant from MCG that we are going to pay this to the litigation funder? There is. All right, so there's a contractual obligation that you do that. Let me restate that. There is an agreement by MCG to pay them what they're entitled to receive, right? So- And if that were not to happen, MCG would be on the hook somehow? That's the concern. All right, okay, got it. And so the problem is, and I apologize because I realize this isn't in the record. Oh, I'm sure. That makes it difficult, but that is the situation. And so it shows up in the briefing somewhat from Vitamins Online when you see them saying that they offered to resolve this by allowing us to have our peace, give or take, right? And you see them saying that we refused. And the answer is yes and no. That's just not the whole story. The whole story is we couldn't agree to what they were asking because we have obligations to the litigation funder and because taking the money out now, which is the other part of what they were insisting on, we just can't agree to because that's in violation of the plan. And that's something that would have needed the debtor to be involved. And so what we have said all along is all of these parties need to come together and come up with a way to make this work. And then- And by the way, is that a very long answer to the question, why do you have standing? I'm really, really sorry. No, no, no. I mean, I'm coming up with that. I mean, that sort of gets, that would be your, that's your pricey as to why you have standing, right? You have some risk here. We do have risk. And we have that agreement that's supposed to protect us from that risk by making sure that we received all of those funds and then distribute them as is necessary. I mean, again, I'm not sure that you would not, that you would lack standing absent that, or that, you know, if the argument is you don't have standing because you're gonna lose, I'm not sure that's a winner, but that's, you've just told us another reason, in fact, right? It is. And in fact- Okay. All right. Thank you, Your Honor. Did I answer your question, Judge Fraker? You did. Thank you. Absolutely. So to jump back to where I started, our position has always been that abstention is appropriate because these are issues that can and could probably more easily be resolved by a court in Utah. And more importantly, on the standard on review, because it's abuse of discretion, there was no illogical, implausible, without support that could be pointed to here to say that there shouldn't have been an abstention. And so the abstention should just be affirmed. And if not, this is a case that needs to go back on remand and be reviewed in full and have a more full record developed so that some of the questions you're asking me that I can't point to a reference in the record for are in the record and become part of the decision and the decisions made based on all of that. And I see that I'm out of time. Well, one last question is, is it your position that if abstention is the correct answer, that the action that's pending now in Utah District Court is the proper place to determine the question? I believe so, Your Honor. In your belief, you don't need a separate action for that? That's determinable in that action? That's my belief. Obviously, we would have to go to that court and that court would be able to- Well, Mr. Niediger may not agree with that, but that's your position. Yes, sir. I got you. And would you have to wait until the appeal is finished or how do you envision that then? I think we could request to intervene at any time. The statute clearly allows us to go and do that. And so it's just, it wouldn't resolve everything, obviously, because the appeal is still pending, but at least we could go and get the process started. Okay. Thank you very much. Thank you, Your Honors. Okay. Okay, Mr. Niediger, you have, let's see how much time, about six and a half. Okay, thank you, Your Honor. Sure. First, I'll turn to the issues of Heart Wise. Heart Wise claims that VOL is trying to change the plan and that's simply not true. If we look at the plan, this is it at DER 8, starting line 28 through 9-11. That's the section that addresses general unsecured claims. It says that all general unsecured claims will be paid in full on the effective date. Then it lists one exception to that and it addresses claim five, only claim five. And it says that claim five will not be paid until a later date, which is different treatment, which that was okay because MCG supported the plan. It does not say that claim three will be treated differently. So that's the first issue. Second, we go to the disclosure statement. This is at AA1042, line 28 through 43, line four. In the disclosure statement, the debtor expressly states, claim five is an allowed claim. The claims based on the judgment were not and are not in a disputed claims reserve. They expressly stated it was an allowed claim. And so they're now trying to post hoc, manufacture this disputed claim reserve to try and recoup an asset that was never disclosed on any schedule. No value was ever assigned to that appellate right property. So counsel, you understood though that at the plan confirmation stage, when it was accomplished and the order was entered, the money was deposited in the court's registry. Nobody ever objected to the fact that the money needed to be distributed. If in fact it wasn't disputed and there was no waiting on appeal, why are we addressing that now? Your honor, we did object. Vitamins Online objected to the plan for numerous purposes. But did you appeal the decision that would have indicated that the money shouldn't be distributed, it shouldn't be held? Well, we did not appeal and I'll tell you why. And the reason why is because the plan does not say that claim three, when allowed, will not be paid until after the appeal. That applies only to claim five, which MCG consented to. And so if claim three is not part of that delayed payment, then we have no reason to appeal. So let me ask you another question. What Judge Clarkson ruled was that the determination that only MCG held the claim and the Vitamins Online did not have a claim was reversed. He did not allow Vitamins Online's claim, did he? No, he did not. And that's part of the relief that we're asking from the panel. We're asking the panel to allow that claim because the MCG objection, MCG lacks standing to bring that objection. And without that objection, the claim is allowed. Well, other than the fact that you think they shouldn't get the money, which is the merits decision, how do they lack standing? Because they don't have a claim against the debtor. But they have a claim to the money, don't they? No, they have, they have- They have a right to payment contractually, don't they? They have a right to payment- I know you don't think it's the right answer, but they have a right to payment. From who though, your honor? The right to payment is not from the debtor. The right to payment is from Vitamins Online. They're trying to enforce a contract in which Heartwise is not a party. They expressly admit they cannot enforce the judgment. And the contract that they are trying to rely on is between Vitamins Online and between MCG. Heartwise is not a party. Your opposing counsel just stated in the secure claim that they have a right to intervene in the underlying action under Utah law. And that law seems to be fairly broad in creating an attorney's lien in the ray of the representation, which would be Heartwise judgment. So even if you reduce it to a minimum, how do they lack standing in light of the statute? Well, your honor, they haven't done that. They haven't perfected that lien. They haven't intervened- There's perfection and there's a lien, right? Those are classically two separate things. Yes, but your honor, we have to look at whether, we have to look at what's before the court. And before the court is the objection that was filed and the claim that was filed. Claim- And what's before the court is what the judge below did, which is just basically erase a ruling on an objection and put everybody back to where they were. And you're asking for something beyond that, which is why we are all scratching our heads here to be perfectly clear. Because if MCG lacks standing, then the only appropriate order that could and can be entered by any court is dismissal. And that's where the error, that's the error. And so- Okay, I think we've all told you why that's circular. If you have anything else to say, I'd go there now. And Barney- Well, I just want to say, but you don't even just want us to allow your claim and deny their claim. You want us then to compel payment from a court registry so that one, your claim is allowed, which wasn't determined by the other judge. Number two, you want us to change the terms of what was paid in and hasn't been appealed and has been sitting in the court since confirmation of the plan, right? No, your honor. And the reason I say no is because we're not asking to change the confirmation order. We're asking to enforce the confirmation order. And that's why I was going through before. The specific provisions of the confirmation order do not state that claim three will not be paid until a later date. And to now construe the confirmation order in that manner, it would violate section 1123A-4 because then claim three is not treated the same. And Vitamins Online did not agree to that different treatment. It would violate 1124-1. It would impair Vitamins Online's claim. It would violate- But you didn't appeal any of those decisions. So they're existing, they're binding at this point, aren't they? No, but your honor, those, so we're talking about interpreting the confirmation order as confirmed. And as written, the confirmation order does not state that claim three will be paid later. And so the confirmation as written doesn't raise those problems. But if this court were then to extrapolate and say, well, MCG, they agreed that the money could be paid at a later date on their claim five. And so now we're also now going to play to apply that to claim three. Well, that is where we start to violate 1123, 1124, 1129B2B2, and 1129A7, because Vitamins Online didn't agree to any of that. And the confirmation as written does not state that claim three will be paid at a later date. Confirmation, the confirmation plan does not, does not address claim three at all separately than the other class one claims that were paid on the effective date and as soon as allowed. And so that's why the court, we're not trying to change the confirmation order. The confirmation order does not say claim three will be paid at a later date. It classifies claim three with all the other class one claims. And as far as MCG or Heartwise getting the money back, it never disclosed that this money would be going back to the organized debtor at any point. If you look at AA1071 to 1072 at their liquidation analysis, 98% of the pre-petition debt is wrapped up in claim three slash five. And if that claim was contingent or disputed, then their appellate right has to be given a value. You give- It wouldn't have mattered if they're paying a hundred cent dollars, why does it matter, counsel? It doesn't. Well, that's just, well, one, because they canceled old equity. They didn't allow creditors to vote. But now they're saying that Vitamins Online is not gonna get paid at all. That's not a hundred percent plan. Okay. You know, you're about two minutes over. With the indulgence of my colleagues, I'm gonna number one, indicate again, we're gonna do our best on this, but it does appear to us as if there's just striking, strikingly different views about the effect of the orders entered below. And that will be a challenge here. Apropos of absolutely nothing, it's clear to me that there's an appellant here who is telling us they want the money sooner than later. There seems to be, you know, there's money here to pay folks. You know, I don't know to what extent you guys have tried to resolve this via settlement. This just screams out for a real world, get into a room and see if you can figure something out. And I'm sure you've already done that. I urge you to do it again. I just think it's, you know, there's what you're asking for here. You know, the arguments here are very clever. They're not necessarily tethered to what the bankruptcy court did. We'll have to figure that out. But all I can suggest to you is that, you know, there are ways to address this that might be more efficient and I will leave it at that. And I don't know if my colleagues have any other comments or observations. I mean, I think we've got some wonderful lawyers on this screen and you're making very interesting arguments. And we're, you know, we were delighted to listen to you. We'll take it under submission and get you a written decision as soon as we can. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you. Okay, can we call the last matter?
judges: LAFFERTY, SPRAKER, GAN